JAMES BOOTH, executor of JAMES BOOTH, dec'd, who was executor of the last will and testament of HENRY PETERSON, dec'd,

*vs.*

MARIA WARD, WILLIAM H. CRAWFORD and CATHARINE his wife, ANDREW P. READING, HESTER ANN CONNELL, ANNA M. BARROLL, MARY C. BARROLL and WILLIAM BARROLL, administrator of HESTER C. BARROLL, dec'd, also executor of HARRIET BARROLL, dec'd.

*New Castle, July T.* 1830.

A testator, having provided for the raising of a fund out of certain real estate, by a charge or sale thereof, bequeathed one moiety to his three nieces, the daughters of J. W., and the other moiety to his five nephews and nieces, the children of P. R., " or to such of them as shall be alive when the time of such division shall arrive." The fund was raised by a sale of the real estate, prior to which sale the three daughters of J. W., all died. *Held*, that the moiety bequeathed to the daughters of J. W. did not survive to the children of P. R.

This was an executor's bill filed for instructions touching the construction of the will.

The testator, Henry Peterson, a resident of England, devised certain lands situate in New Castle county, Dela-

ware, to his nephew, Andrew Jacob Peterson, his heirs and assigns, charged with the payment to his executors of £500, with interest from January 1st, 1797,—to be paid at the expiration of two years after the testator's death should be known in America, and his will produced there. The £500 charged upon the land was bequeathed as follows: "And when the £500 shall be paid, one moiety I give equally to my three nieces, the daughters of Dr. James Wynkoop, Mary, Hester and Harriet Wynkoop; and the other moiety equally to my five nephews and nieces, the children of Philip Reading, to wit: Philip, Maria, Catharine, Andrew and Sarah Reading,—or to such of them as shall be alive when the time of such division shall arrive." The will further provided that upon default in payment of the £500 at the time directed, the devise to Andrew P. Reading should be revoked; and in that event the land was devised to the executors in fee simple, who were directed to sell the same and to divide the net proceeds, as was before provided touching the division of the £500 charged upon the land.

The testator died, February 5th, 1814. In the year 1824 the will was proved in America, and afterwards letters testamentary were granted to Nicholas Hammon and James Booth.    The charge upon the land having remained unpaid more than two years after probate of the will, the executors, on July 14, 1827, sold the land for $500.    Nicholas Hammon died; afterwards the surviving executor, James Booth, also died.    James Booth, the present complainant, is executor of the deceased surviving executor.

The three daughters of Dr. James Wynkoop, nieces of the testator, to whom the first moiety of the proceeds of sale was bequeathed, were all deceased at the date of the sale,—the period of division under the will.    Their representatives are among the defendants to the bill.    Of the five children of Philip Reading, to whom the other moiety was bequeathed, two died before the sale of the land

leaving three to survive, viz: the defendants, Maria, widow of Wm. M. Ward, Catharine, wife of William H. Crawford, and Andrew P. Reading.

The three surviving children of Philip Reading claimed to be entitled to the entire fund under the provision for survivorship. Thereupon the executor filed this bill, for instructions by the Chancellor. The answer of the defendants admitted all the facts set forth in the bill, submitting the claims of the parties to the opinion and decree of the Chancellor.

The cause came before the Chancellor, upon the bill and answer, at the July Term, 1830.

*Rogers*, for the representatives of the daughters of Dr. James Wynkoop.

The will, in effect, divides the fund into two moieties, giving one to the Wynkoop family, the other to the Reading family. There is a vested interest in each family to the moiety bequeathed to it, subject to a survivorship among the members of that family. The provision for survivorship does not extend to the entire fund but to the respective moieties as they are severally bequeathed.

*Read*, for the surviving children of Philip Reading.

The testator intended the whole fund for the two families, the Wynkoops and Readings, and for no one else. No other objects of his bounty are named or seem to have been contemplated. And as to these families his favor to the legatees named is personal ;—it is to those then living and who might be living when the fund should be realized. There was no vested interest in the deceased legatees.

JOHNS, SR., CHANCELLOR.—The intent of the testator seems clear. A moiety of the £500 was intended for the

daughters of James Wynkoop, and the other moiety for the five children of Philip Reading. There are no words to indicate an intent to give more than a moiety to either family. The reasonable construction of the words, " or " to such of them as shall be alive when the time of such " division shall arrive" is, that the survivors of the Wynkoops shall take a moiety and the survivors of the Readings the other moiety. The words, " such division," certainly intended the division into moieties, and if it meant to include also a sub-division (as it might do), it can only mean to sub-divide one moiety among the survivors of the Wynkoops, and one moiety among the survivors of the Readings ; for the moieties were to be divided not equally but in the proportion of three and five. The words " such " of them, &c.," follow after the bequest to the Readings ; which raises a doubt whether " them," means both families. But supposing such to be the construction, still as the extent of the testator's bounty seems to have been to give a moiety only to each family, and there are no words to carry the whole to the Readings, in the event of the death of all the Wynkoops, I am of opinion that the survivors of the Readings are entitled to one moiety only ; and a decree will be so made. With respect to the moiety bequeathed to the Wynkoops I can make no decree. The period of division was at the sale of the land in 1827, at which time the three daughters of James Wynkoop were all dead. The legacies were not vested so as to pass to representatives of the daughters, and there are no parties to the cause in whose favor any decree for this moiety can be made.

Decree accordingly.